**In re the Interest of M.H., D.H., and P.T., Children.**

**Appeal of D.H., Natural Mother.**

**No. 84–547.**

Court of Appeals of Iowa.

Feb. 26, 1985.

Nancy A. Baumgartner, Assistant Linn County Public Defender, for the appellant-mother.

Gordon E. Allen, Special Assistant Attorney General, for the appellee-State.

Gary Shea, guardian ad litem, for the children.

Heard by OXBERGER, C.J., and DONIELSON, and SNELL, JJ.

OXBERGER, Chief Judge.

The petitioner attacks the constitutionality of the statute providing for termination of parental rights and also says there was inadequate evidence presented to support the court's decision to terminate her rights regarding her three children. We find the court's decision was supported by clear and convincing evidence, and find the statute constitutional as applied and on its face.

The petitioner, D.T., has three children who are the subjects of this action; a boy, M.H., born in 1968; another boy, D.H., born in 1969; and a girl, P.T., born in 1973. The boys were born during D.T.'s second marriage, and P.T. was born during petitioner's third marriage. During 1977–78, the mother met another man, R.B., and became involved with him. In November 1981, the children were found to be in need of assistance and removed from the home. After petitioner met R.B., she and the children moved in with R.B. and his wife. The three adults engaged in a menage-a-trois witnessed by the children. The family came to the attention of the Department of Social Services when they appeared at school with bruises on their faces, and were found to be living in a room without heat, adequate lighting, or ventilation, and containing dog feces and urine. Evidence at the CHINA hearing showed all three children had been subjected to sexual and physical abuse. The evidence indicated that R.B. had been the perpetrator of the abuse, and petitioner at the time denied her involvement, saying she had been forced to permit the abuse because of fear of R.B. A case plan was developed in which petitioner was required to find adequate housing when the court considered returning the children, not to drink excessively, attend parenting classes, prevent any contact of the children with R.B., become involved in the children's school activities, not abuse or neglect the children, and attend Parents Anonymous, a group helping parents who abuse their children. At the six-month review in April 1982, placement was continued. In July 1982 the Department of Social Services recommended the daughter be returned to the home, noting that petitioner had admitted her involvement in both the physical and sexual abuse, and that the case worker viewed this as a positive sign. The court denied the request to return the child to petitioner, and in its order expressed surprise that petitioner was involved in the abuse. The court stated it had believed petitioner was merely an observer of the abuse and declared the case plan was therefore inadequate. Petitioner says the social services department was working with her under the presumption she was involved in the abuse and not an observer. The court ordered a new plan be drafted. The new plan presented in November duplicated the former plan and was never formally adopted by the court. Subsequent to her admission of involvement in the abuse, petitioner pleaded guilty to lascivious acts with a child and perjury, and was sentenced to two concurrent five-year terms of imprisonment. R.B. was also sen-

tenced for his involvement, and both the mother and R.B. are incarcerated at this time.

In December 1982 a petition was filed to terminate D.T.'s parental rights. The children were evaluated at the University of Iowa Hospitals and Clinics, and Dr. Schor of the Child Development Clinic recommended to the court petitioner's parental rights be terminated. After a four-day trial, the referee agreed with this recommendation and the recommendation of the guardian ad litem, and terminated D.T.'s parental rights. The district court also affirmed the referee's decisions.

Petitioner claims that in these proceedings three errors occurred: (1) the court improperly relied almost exclusively on petitioner's pre-CHINA adjudication acts, and that the evidence supporting termination therefore does not rise to the clear and convincing standard; (2) that since the case plan was inadequate, and a new plan was not implemented, the termination statute is unconstitutional as applied to her and denied her fundamentally fair procedures guaranteed by the fifth and fourteenth amendments; and (3) the termination statute is unconstitutional on its face because it vests too much discretion with the trial court.

## I.

■ Our review of such actions is de novo. Iowa R.App.P. 4. We give weight to the finding of the juvenile court, but are not bound by them. Iowa R.App.P. 14(f)(7). Our primary concern is always the best interests of the children. *In Interest of Chad*, 318 N.W.2d 213, 216 (Iowa 1982). However, the right to raise one's children is an essential, basic civil right, a right "far more precious than property rights." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). It is presumed the best interests of the child will be served by leaving it with its parents, but this is not a conclusive presumption. *In Interest of T.D.C.*, 336 N.W.2d 738, 740 (Iowa 1983). The State has a duty to see that every child receives minimally adequate care and treatment and will intercede when parents abdicate their responsibility. *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The State may revoke the rights of parents if their allegations are proven by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 770, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982); Iowa Code § 232.-102 (1983).

Petitioner says the court looked only on her actions prior to the CHINA adjudication and that this was error because it is implicit in the applicable termination statute, Iowa Code § 232.116(5) (1983), that the court consider post-CHINA conduct as well. The mother relies on the language of the statute providing the court must find there was conduct resulting in a CHINA adjudication, and that the parent has engaged in conduct showing "[t]here is clear and convincing evidence the child cannot be returned to the custody of his or her parents as provided in section 232.102." Iowa Code § 232.116(5)(c) (1983).

■ We initially note that not only may the court look at the past behavior of the parent, but that it is an important factor. We look to the child's long-range and immediate interests and consider what the future would hold for the child if returned to the parent. We may obtain insight for this determination from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

The drastic disregard for the children in the past is a strong indicator of this mother's future conduct and the extreme danger such conduct could hold for these children. Without delving into all the sordid details of the torment inflicted on these children, we note the record shows the daughter was forced to engage in sex with the mother, the mother had intercourse with both of her sons, and the mother's friend, R.B., engaged in sex acts with both the girl and the two boys. The boys were also forced into sex with the daughter. The mother

and R.B. obtained compliance from the children by beating them with their fists and with two by fours. On occasion the children were used for targets for R.B.'s B.B. gun practice, with petitioner commenting she did not think he meant any harm. The children's clothing was inadequate and the area they slept in unsanitary and unheated.

The court relied heavily on such evidence in its determination, but not exclusively. The court looked to the past behavior and post-CHINA conduct to determine that the petitioner was not capable of changing a pattern of behavior dangerous to the children. Since the age of thirteen petitioner has repeated a pattern of associating with alcoholic, violent, and abusive men and returning to her mother between marriages. She was first married at eighteen to a man she thought was mentally disturbed and who abused her. Her next liason resulted in the birth of a son who was also found to be abused, and whom she later left with the child's grandmother. A second marriage followed to another man who abused her, and which resulted in the births of the two boys. The third marriage in which P.T. was born was also to an abusive man. During her relationships with these men she had three pregnancies that were stillborn because she was beaten during the pregnancy. A doctor in Child Psychiatry at the University of Iowa hospitals who participated in the evaluation noted, "Taking the group in total, one is struck by the amazing repetitiveness of the relationships and of her seeming inability to profit from experience."

While petitioner claims the evidence the court looked to involving post-CHINA conduct is slim, it supports the conclusion that petitioner will continue to expose the children to danger. She says it is wrong for the court to consider her initial denial of involvement as a negative factor when the social workers considered it an advance on her part and encouraged her to admit her part in the abuse. The court cannot blind itself to such perjury, although it must be put in perspective.

The court also noted that petitioner seemed unable to sever her unhappy relationship with R.B. She says that the only contact she had with R.B. was to write a letter asking prison officials to keep him from writing to her. Other evidence, however, shows that for a period following the CHINA adjudication she considered herself R.B.'s common-law wife and adopted his name. At the six-month review hearing following the adjudication, she visited R.B. four times in forty-one days. At that hearing the court noted the mother was able to travel to the next county to see R.B., but she had to miss a visit with one of the children's teachers because she said she had no transportation to travel across town.

Petitioner also takes exception to the court's note that she has been unable to procure better living conditions if the children were to be returned. She says unless the children are returned, she cannot obtain ADC, and until she can get the aid her economic situation prevents her from finding better living quarters. However, the evidence shows that she was unable to keep a job and had fallen behind in the rent of the apartment she shared with her mother prior to her incarceration.

When the children were visiting on one occasion, she allowed a male visitor to stay in the home, although she knew this person had made sexual advances towards the daughter, P.T. She claims this should not be held against her because she allowed nothing to happen and this occurred only once in the summer of 1982. Nevertheless, it again points out petitioner's inability to appreciate the emotional injury inflicted on the children, and further demonstrates her inability to keep them from harm.

█ The court noted that petitioner has complied with most aspects of the case plan and has visited the children regularly except for the time she has been in jail. But as the State, guardian ad litem, evaluating doctors, and the referee point out, while petitioner appears to sincerely wish to be reunited with her children and would like to be able to provide for them, she simply

cannot. We do not doubt her sincerity when she says she loves her children. However, a parent's interest in the custody and companionship of her children does not outweigh their need to have minimal care and to be free from physical, sexual, and emotional abuse.

■ We find the court's determination is supported by clear and convincing evidence.

## II.

Petitioner next claims that she should have been given an adequate case plan so that she would know how to comport herself in order to achieve the return of her children. Since the court indicated the plan presented to her was inadequate, and no new plan was implemented, she says she was denied fundamentally fair procedures, in violation of the fifth and fourteenth amendments to the United States Constitution and article 1, sections 9 and 10 of the Iowa constitution.

■ We do not dispute petitioner's claim that her interest in maintaining the integrity of her family unit is protected by the Due Process Clause of the United States and Iowa constitutions. *Alsager v. District Court of Polk County, Iowa,* 406 F.Supp. 10, 22 (S.D.Iowa 1975). However, we agree with the State that neither is there a contract relationship between the State and the parent; where after a CHINA adjudication a case plan is presented, and if the parent gets a passing score the children are returned to them. As we have indicated in our discussion, petitioner visited her children regularly, attended the meetings required, and complied in large part with the case plan presented. Whether the mother received a passing grade on this case plan, or would have with a more involved case plan, the evidence still points to the fact the mother is incapable of changing her behavior in time for these children.

We cannot accept petitioner's argument that she was denied fair procedures or the statute was unconstitutionally vague as ap-

plied. In cases where the Iowa courts have addressed similar arguments, the courts have found that a long and detailed history of juvenile court proceedings can afford the parent with ample information of what is expected of them. *Long v. Long,* 255 N.W.2d 140, 144 (Iowa 1977). In discussing whether another termination statute was constitutionally applied, the court has said, "Briefly stated, the ordinary parent should encounter no difficulty in 'getting the message' clearly conveyed by (the statute)." *In Interest of Lewis,* 257 N.W.2d 505, 511 (Iowa 1977).

■ Petitioner has received services for ten years from both the South Dakota and Iowa Departments of Social Services. She admitted that although the court thought the case plan was inadequate because it did not know of her involvement, the social workers who attempted to assist her presumed she was involved and rendered services accordingly. A decade of services has been unable to help this woman. If petitioner was not aware initially, the services, involvement in juvenile courts, and counseling should have allowed her to "get the message" on how to conform her conduct.

## III.

Petitioner's last claim goes to the constitutionality of the applicable termination statute, section 232.116. It indicates the court "may" order termination of parental rights if certain grounds occur. *Id.* She says this results in a law which will depend on the personal feelings of the court, making it unconstitutionally vague in violation of the due process clauses of the federal and Iowa constitutions. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Alsager v. District Court of Polk County, Iowa,* 406 F.Supp. 10, 18–19 (S.D. Iowa 1975).

■ In challenging the constitutionality of a statute, the petitioner has a heavy burden. There is a strong presumption of constitutionality, and this court will avoid a construction which finds the statute

unconstitutional, if it can be avoided. *Fitz v. Dolyak*, 712 F.2d 330, 332 (8th Cir.1983); *Stracke v. City of Council Bluffs*, 341 N.W.2d 731, 734 (Iowa 1983). The court will afford statutes every presumption of validity and will find them unconstitutional "only upon a showing that they clearly infringe on constitutional rights and only if every reasonable basis for support is negated." *Woodbury County Soil Conservation District v. Ortner*, 279 N.W.2d 276, 277 (Iowa 1979). When there is a doubt, that doubt will be resolved in a manner to avoid finding the statute unconstitutional. *Iowa Industrial Commissioner v. Davis*, 286 N.W.2d 658, 661 (Iowa 1979). When specifically alleging a statute is void for vagueness, the challenger must overcome a vigorous presumption of constitutionality. *State v. Bauer*, 337 N.W.2d 209, 210 (Iowa 1983).

In her claim petitioner relies on the federal district court decision of *Alsager*. There, the court dealt with a challenge to the section of the Code which is the predecessor of Iowa Code § 600A, our other statute providing for termination of parental rights. The petitioner there also alleged the statute was unconstitutionally vague on its face. *Id.* at 15. The court noted the problem with a statute that is vague is threefold: (1) it does not give adequate notice of the conduct expected, (2) it impermissibly delegates policy matters to police, judges, and juries with resulting discriminatory application, and (3) operates to inhibit exercise of certain basic freedoms. *Id.* at 17. The court found that the statute was impermissibly vague on its face, and that the petitioner there was denied procedural and substantive due process. *Id.* at 26. While it addressed the specific grounds set out at the statute, the court also indicated it had a problem with permissive language which seemed to indicate the court had full discretion in making a termination decision; including the use of the word "may" and allowing termination if certain grounds were found including "other conduct," "likely," to be detrimental. *Id.*

On review, the Eighth Circuit Court of Appeals affirmed the finding of violation of substantive and procedural due process violations. *Alsager v. District Court of Polk County, Iowa*, 545 F.2d 1137 (8th Cir.1976). However, the court declined to address the issue of vagueness, since it said Iowa courts should be given a chance to construe narrowly the statute in a manner making the statute constitutional. *Id.*

In this instance, we find, as the court did in *Long* and *Lewis*, that the statute here provided ample notice to petitioner through her extensive involvement in the court proceedings and services provided to her.

■ We also find that the termination statute used here does not impermissibly delegate policy matters to the court. Unlike the statute which troubled the circuit court in *Alsager*, this statute contains only one indication of permissibility, the word "may." The statute is quite specific regarding the grounds necessary to terminate parental rights. There is little leeway for the court in deciding whether a CHINA adjudication has been filed, whether twelve months have passed since then, and whether there is clear and convincing evidence the child cannot be returned. Iowa Code § 232.116(5) (1983). The only problem may arise from the indication the court "may" find termination is proper.

We look to the statute as a whole and read it along with related provisions. *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530, 532 (Iowa 1981). The statute states "except as provided in subsection 6" the court may order termination. Iowa Code § 232.116 (1983). Subsection six provides for certain instances in which the court may find that factors warrant giving the parent another chance. This may occur when the child is over ten years of age and objects to the termination, a relative has legal custody, there is clear and convincing evidence it would be detrimental to the child to terminate the relationship, or some intervening factor prevents the parent from continuing the parent-child relationship. Iowa Code § 232.116(6) (1983). Reading the statute as a whole, we are

convinced it was the intent of the legislature not to vest discretion in termination completely with the court, but to give the parent another chance if the court decides factors indicate it would be proper. Subsection six shows intent to give the parent a chance when there are extenuating circumstances. Clearly, not every such extenuating circumstance can be listed. We are convinced the use of the word "may" was intended to allow the court to give the parent another try at correcting the situation leading to the CHINA adjudication. The statute interpreted in this manner can work only to the parent's benefit. Accordingly, it does not vest too much discretion with the court, and we find the statute is not unconstitutionally vague.

AFFIRMED.