**In re the Interest of D.T., S.T., and C.W., Minor Children,**

**D.T., Natural Mother, Appellant.**

No. 87–225.

Court of Appeals of Iowa.

Oct. 28, 1987.

Mark Schlenker of the Hall Law Firm, Indianola, for mother-appellant.

Robert Stuyvesant of Schoder, Stuyvesant & Benton, Carlisle, for the children.

Thomas J. Miller, Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for State.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

OXBERGER, Chief Judge.

The natural mother, D.T., is appealing the juvenile court decision terminating her parental rights as to each of her three children. She presents two arguments on appeal: (1) that the state failed to prove by clear and convincing evidence the termination of parental rights was necessary; and (2) issuance of the termination order has denied her substantive and procedural rights to due process under the Iowa and United States Constitutions. We affirm.

Our review of the proceedings to terminate parent-child relationships is de

novo. *In the Interest of L.P.*, 370 N.W.2d 839, 840 (Iowa App.1985); *In the Interest of M.H.*, 367 N.W.2d 275, 278 (Iowa App. 1985). We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses whom that court heard and observed firsthand, but we are not bound by them. *Interest of L.P.*, 370 N.W.2d at 840; *Interest of M.H.*, 367 N.W.2d at 278. Central to a determination of this nature are the best interests of the child. *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The state has the duty to see that every child receives minimally adequate care and treatment and will intercede when parents abdicate their responsibility. *Interest of Dameron*, 306 N.W.2d at 745; *Interest of M.H.*, 367 N.W.2d at 278. The state may revoke the rights of parents if its allegations are proven by clear and convincing evidence. Iowa Code § 232.116(5)(c) (1985); *Interest of Dameron*, 306 N.W.2d at 745.

D.T.'s first argument on appeal is that the state failed to prove by clear and convincing evidence that a termination of parental rights was necessary. The state argues that the children cannot be returned after three- and one-half years of social services and seventeen CHINA hearings, and that the evidence of D.T.'s unfitness is overwhelming.

 We initially note that not only may the court look at the past behavior of the parent, but that it is an important factor. *Interest of M.H.*, 367 N.W.2d at 275. We look to the child's long-range and immediate interests and consider what the future could hold for the child if returned to the parent. *Id.* We may obtain insight for this determination from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing. *Interest of Dameron*, 306 N.W. 2d at 745; *Interest of M.H.*, 367 N.W.2d at 278. Also, the current statutory termination provisions are preventative as well as remedial, and therefore, mandate action to prevent probable harm to a child and do not require delay until after harm has occurred. *In the Interest of N.H.*, 383 N.W. 2d 570, 572 (Iowa 1986); *Interest of Dam-*

*eron*, 306 N.W.2d at 745. We have reviewed the record in this case thoroughly and believe the best interests of the three children involved require a termination of D.T.'s parental rights.

The rights of their natural father were terminated prior to this proceeding. D.T. has also been diagnosed as being between the dull normal and mildly retarded level of intellectual functioning. The three children in this case are ages 6, 5, and 3. All have been adjudicated children in need of assistance. They have been placed outside D.T.'s home since February, 1985.

The Iowa chapter of this case unfolded three- and one-half years ago on a referral from the Arizona Department of Human Services. The referral was made due to a concern over the children's home being a health hazard. The primary concern present in this case is D.T.'s inability or refusal to maintain a sufficiently clean home for her children. The case's entire history is teeming with examples of unsanitary and hazardous home conditions.

The social worker's reports show this home to be extremely dirty. It is cluttered with children's toys throughout, dirty laundry is strewn about in all rooms, dirty dishes are piled in the sink, dishes with drying and rotting food have been left both in the kitchen and living room, various foods are often spilled on, and ground into, the carpet, at one point there was fecal matter in the carpet and dirty diapers left in the bathroom. The home generally smelled of decaying garbage. This brief description is hardly adequate to describe the deplorable living conditions existing in the home throughout most of this case. The main concern is that the children will either be injured or exposed to disease while in the care of their mother. In addition, there is evidence that D.T. has left her children unsupervised. One child has also been diagnosed as failing to thrive.

The local human services agencies stepped in to provide D.T. with assistance in her homemaking and parenting skills. Several case plans were developed with little or no success. Written contracts were executed in an attempt to alleviate the situation. After the children were re-

moved, home visitation rights were granted as an incentive for D.T. to improve. These efforts met with little success. Even the prospect of visitation was unable to motivate D.T. to change and consistently maintain a sanitary home. Whenever progress would be made, invariably D.T. would regress.

This case has seen seventeen separate CHINA hearings. D.T. has received the aid of three social workers in two states; three child abuse investigators have been involved; four protective homemakers, used as teachers, helpers, and monitors, an in-home therapist, D.T.'s parents, the children's father, friends, and attorney have all been involved at various times in an attempt to help D.T. Even with all these efforts, D.T. has been unable to consistently provide a safe, healthy and clean environment for her children.[1]

D.T. argues that the children have never been placed with her since she entered into a new relationship which is characterized as a "more stable thing." We do not feel, in this case, that placement with D.T. again would be productive. It is abundantly clear that regardless of whomever D.T. is with, or wherever she is living, she is unable to provide these children with a safe and healthy environment. Her history strongly militates against a return of the children.

As tragic as termination is, there comes a point where there is no other alternative. That point has, unfortunately, been reached in this case. We hold that the state has shown by clear and convincing evidence that D.T.'s parental rights should be terminated.

■ D.T. also contends the issuance of the termination order has denied her substantive and procedural rights to due process under the Iowa and United States Constitutions. She argues, relying on *Alsager v. District Court of Polk County, Iowa*, 406 F.Supp. 10 (S.D.Iowa 1975), *aff'd in part*, 545 F.2d 1137 (8th Cir.1976), that procedural due process requires the state to show that the consequences, in harm to the children of allowing the parent-child relationship to continue, are more severe than the consequences of termination, and that her substantive due process rights are violated because the statute does not require such a showing. We reject these challenges.

In *In the Interest of C. & K.*, 322 N.W.2d 76 (Iowa 1982), a mother challenged the termination statute because of its failure to require a showing of harms. *Id.* at 81. The supreme court rejected this argument and found that the courts interpret the statute to require a showing of harms. *Id.* Applying this case, it is clear that D.T.'s challenge on this ground must fail.

We also feel the state showed the consequences of returning the children to D.T. are more severe than the consequences of termination. The evidence is overwhelming that D.T. is unable to provide a safe environment to these children. The state has shown these children, if returned, would face harms naturally arising from the mother's indifference to their need for attentive supervision and a healthy environment. Two social workers testified that they felt the dangers of returning the children outweighed the impact termination would have on the children. We are again reminded that our termination statutes have a preventative purpose as well as remedial, and we believe that the harms shown by the state outweigh the impact of termination on the children. We therefore hold that neither D.T.'s substantive nor procedural due process rights were violated in this case.

AFFIRMED.

---

1. This pattern bears out the diagnosis made by Dr. Meidlinger in 1983 that:
 (1) D.T. is at risk to both neglect and abuse her children;
 (2) She lacks internalized standards for her own behavior and is unlikely to change without strong external demand;
 (3) She is lacking in knowledge of child development and in empathy for her children and their needs;
 (4) She has intellectual limitations upon her ability to change.