**In the Interest of K.M.R. and D.C.R. III, Minor Children.**

**Appeal of J.R. and D.C.R. II, Parents.**

**No. 89–1148.**

Court of Appeals of Iowa.

Feb. 22, 1990.

Ronald L. Wheeler, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

OXBERGER, Chief Judge.

The parents of two children appeal from the juvenile court order terminating their parental rights. They contend they were denied due process by the juvenile court's alleged requirement that they admit specific instances of abuse in order to avoid termination. They also contend the juvenile court did not adequately designate those portions of the CHINA record of which it took judicial notice. Finally, they challenge the sufficiency of the evidence to establish that the children cannot safely be returned to their home. We affirm.

Our review of proceedings to terminate a parent-child relationship is de novo. Iowa R.App.P. 4. We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses the court has heard and observed firsthand, but we are not bound by them. Upon our de novo consideration of the record before us, we affirm the termination order.

This case involves two children, a boy born in June 1984 and a girl born in September 1986. Their parents are married to each other, but the marriage is stormy and violent. There was evidence that the father has physically abused the mother and both children on repeated occasions; he has once been convicted of child endangerment.

Child abuse by the mother has been alleged but not so clearly demonstrated.

In response to the father's abuse of her, the mother once hired two men to kill him; the two men did assault and seriously injure the father. For her role in these events the mother was convicted of a crime; she served about nine months in prison but reconciled with the father after her parole. Although the parents are still married to each other, the marriage remains marked by conflict and temporary separations.

The older child was placed in foster care in 1985, when he was about a year old, after hospital employees reported bruises on him. (This was before the birth of the younger child.) The older child was returned to the father's custody in 1986, while the mother was incarcerated for her role in hiring the assailants who injured the father. When the younger child was born in September 1986, during the mother's incarceration, that child was also placed in the father's care. After the mother's parole in November 1986 the children lived with both parents until April 1987. In that month the mother reported to social workers that the father was consistently abusing her and both children. An investigation showed injuries on both children. The children were placed in emergency foster care, and shortly thereafter they were adjudicated to be children in need of assistance. The children have been in foster care continuously since April 1987.

During the children's foster care the parents have exercised regular visitation. There is conflicting evidence on whether their marital relationship may have improved somewhat; however, it is clear that there remains considerable strife within the marriage. A social worker reported that marital counseling had met with only limited success.

In July 1988 the State filed a petition to terminate the parental rights of both parents with respect to both children. After a hearing, the juvenile court terminated the parental rights of both parents. The juvenile court relied on Iowa Code section 232.-116(1)(e), which permits termination if a child has been adjudicated a child in need of assistance, has been in foster care for twelve of the last eighteen months, and cannot safely be returned to the parents' home. The parents appeal from the termination order.

■ The parents contend the juvenile court erred by relying in part on their refusal to admit many of the episodes of alleged child abuse. They argue they were denied due process by the alleged requirement that they admit specific instances of abuse in order to avoid termination. We find this contention without merit.

Iowa courts have recognized the existence of a " 'parental interest in the integrity of the family unit; nonetheless we are also cognizant this interest is not absolute, but rather may be forfeited by certain parental conduct.' " *In Interest of R.J.*, 436 N.W.2d 630, 634 (Iowa 1989) (quoting *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). The State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it. *Dameron*, 306 N.W.2d at 745. "In regard to this obligation, the general assembly has carefully crafted a legislative framework for State intercession into the parent-child relationship while protecting wherever possible the integrity of the family unit." *In Interest of I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988).

The parents maintain that the imposition of the burden of admitting the allegations of abuse bears no rational relationship to the relevant question properly before the court and therefore violates their constitutional rights to due process. We disagree. In *In Interest of H.R.K.*, 433 N.W.2d 46, 50 (Iowa App.1988), we rejected a similar contention that involved acknowledging the occurrence of sexual abuse as a requirement to complete a sexual abuse treatment program. In *In Interest of H.R.K.* we stated, "the best interests of a child in any termination proceeding are of utmost importance ... and the requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs." *Id.*

We further noted the importance of this recognition on the part of the parents as it acknowledges that such parents are more open to treatment. *Id.* We believe this reasoning applies equally to the case at bar.

At the hearing Dr. Randall Alexander, a physician and assistant professor at the University of Iowa specializing in child abuse, testified that abusive parents must make an admission to the behavior that caused them to abuse their children before the children can be safely returned home. Dr. Alexander further stated that parents must resolve their own abuse and admit to abusive behaviors before such behaviors can be changed. The juvenile court stated:

> In spite of the abuse having been found to have happened by the Juvenile Court and having been found to have happened by a jury restricted by the criminal rules of evidence, the [parents] ... still do not acknowledge the child abuse. The [parents] ... have been described by several witnesses as being controlling and manipulative of the service providers and of the court system. They have launched a diversionary campaign in an attempt to place blame on everyone but themselves.
>
> ....
>
> [The parents] have not made sufficient progress in resolving their marital problems at this time where they could parent together. They have not dealt with the fundamental issue of what caused the behavior that resulted in the abuse to their children in the first place. The same risk is now present which resulted in the children's removal originally.

We agree with the analysis of the juvenile court.

Upon our review of the record, we find the juvenile court properly considered the parents' inability to admit to the abuse and failure to protect the children from abuse as a factor supporting termination of parental rights. Consequently, we find the parent's due process claim to be without merit.

■ Next, the parents contend the juvenile court did not adequately designate those portions of the CHINA record of which it took judicial notice. The parents urge that the juvenile court's admission of portions of the CHINA proceedings does not comport with the procedural safeguards required by the Iowa Supreme Court's decision in *In Interest of Adkins,* 298 N.W.2d 273, 277–78 (Iowa 1980).

The State asserts that the *Adkins* case differs from the case at hand. In *Adkins* the juvenile court judicially noticed the prior CHINA proceedings. *Adkins,* 298 N.W.2d at 276. In this case the State requested the juvenile court to judicially notice the legal documents in the CHINA file and certain exhibits which had been entered into evidence in previous CHINA proceedings involving these children.

In *In Interest of Adkins,* 298 N.W.2d 273 (Iowa 1980), the court held:

> We hold it is permissible for a trial court in a subsection 232.114(5) termination proceeding to judicially notice the prior CHINA case, including the evidence, providing certain safeguards are followed. Papers requested to be noticed must be marked, identified, and made a part of the record. Testimony must be transcribed, properly certified, marked, identified, and made a part of the record. Trial court's ruling in the termination proceedings should state and describe what it is the court is judicially noticing. Otherwise, a meaningful review is impossible.

*Id.* at 277–78.

We find the juvenile court's ruling was wholly consistent with the rule announced in *In Interest of Adkins,* 298 N.W.2d 273, 277–78 (Iowa 1980), and *In Interest of E.J.R.,* 400 N.W.2d 531, 532 (Iowa 1987). "In those cases [the supreme court] recognized that because of the interdependent nature of CHINA and termination actions, evidence properly admissible in an adjudicatory proceeding should be accorded the same standard of admissibility in a subsequent hearing on termination pertaining to the same child." *In Interest of K.F.,* 437 N.W.2d 559, 563 (Iowa 1989). Upon our review of the record, we believe the record was sufficiently made to allow this court to make a meaningful review of the juvenile

court's decision. The record allows us to determine what documents the court considered in the termination proceedings. We find no basis for reversal can be sustained on this challenge.

■ Finally, the parents also challenge the sufficiency of the evidence to establish that the children cannot safely be returned to their home.

Central to a determination of this nature are the long-term, as well as immediate, best interests of the children. *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We consider what the future holds for the children if returned to their parents. *Id.* Essential to the evaluation of a child's best interests is an examination of the parents' past performance from which valuable insight may be gained as to the future quality of care the parents are able to provide. *In Interest of O'Neal*, 303 N.W.2d 414, 423 (Iowa 1981). The past behavior of the parent is an important factor to be considered by the court. *In Interest of M.H.*, 367 N.W.2d 275, 278 (Iowa App.1985). Iowa statutory termination provisions are preventative as well as remedial. *Interest of Dameron*, 306 N.W.2d at 745. They are designed to prevent probable harm to a child. *Id.*

The State must prove by clear and convincing evidence the allegations contained in the termination petition. *See In Interest of C.M.T.*, 433 N.W.2d 55, 56 (Iowa App. 1988); *Santosky v. Kramer*, 455 U.S. 745, 770, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982). Termination may occur under Iowa Code section 232.116(1)(e) if the juvenile court finds: (1) the child has been adjudicated a child in need of assistance pursuant to section 232.96, (2) the custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, (3) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102. *In Interest of A.C.*, 415 N.W.2d 609, 612 (Iowa 1987).

The issue in dispute herein concerns whether there is clear and convincing evidence that the children cannot be returned to the parents' custody. This third requirement of section 232.116(1)(e) is met when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code section 232.2(6), exist. *In Interest of A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).

Upon our review of the extensive record in this case we believe there is clear and convincing evidence that the children would be in imminent threat of those harms detailed in section 232.2(6) if they were returned to their parents' care. We make this determination after specifically examining the parents' past performance, as it may be indicative of the quality of future care the parents are capable of providing. *See O'Neal*, 303 N.W.2d at 423. Particularly in this case, we believe the past behavior of these parents is an important factor to consider.

The record reveals that the family has a history of child and spousal abuse dating back to November 1985. As previously noted, the father has once been convicted of child endangerment. Additionally, the mother was convicted of conspiring to commit a forcible felony for hiring two men to kill her husband because of the abuse to her and their son. After the mother was released from prison in November 1986 she returned to live with her husband and their children. In April 1987 the mother again reported her husband was physically abusing her and their seven-month-old daughter. At that time the mother described in detail the abuse to her and their daughter. The father has consistently denied the alleged abuse which led to the children's removal in April of 1987. Within several days of the mother's initial report, she recanted those allegations and has up through the hearing denied that her husband abused their daughter.

As previously noted, we especially give weight to juvenile court's findings on the credibility of the witnesses the court has heard and observed firsthand. The record reveals that the juvenile court properly considered the testimony of Dr. Alexander, the social workers, therapists, and Mr. Jerry

Harlow, a therapist with Iowa Children and Family Services. The juvenile court stated:

> [The parents] have counseled with several counselors over the past two years. Their current counselor [Mr. Harlow] testified in this hearing that the [parents] ... have made considerable progress, but there remains more work to be done on their parenting. Six months ago he predicted the [parents] ... would be ready to have their children returned to them in six months. At this hearing he would not recommend return of the children today, but recommended a gradual return of the children over the next six months, with no certainty they could be totally returned at the end of six months. While the [parents] ... may have made some improvement in their marital relationship, the Court notes that Mrs. [R.] ... has left Mr. [R.] ... twice within the last year.

The Iowa Supreme Court has held a child should not be forced to endlessly suffer the parentless limbo of foster care. *In Interest of A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The children in this case have been in foster care for over two years and their best interests require that they be allowed to get on with their lives. We believe the order terminating the parental rights under the circumstances of this case was proper.

After reviewing the record in this case we agree with the juvenile court's conclusion. We do not believe these children should be forced to suffer indefinitely in parentless limbo. To rule that these children must await the maturity of their parents would keep them in limbo to see if additional time would provide them with stable, nurturing parents, absent the serious marital conflicts that caused physical abuse to both the children and their mother. Consequently, we believe it to be in the children's best interests to terminate parental rights. We affirm the decision of the juvenile court in all respects.

AFFIRMED.