# IN THE COURT OF APPEALS OF IOWA

No. 4-039 / 13-1961
Filed March 12, 2014

IN THE INTEREST OF S.K.,
Minor Child,

S.K., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer Minot, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Rachel C.B. Antonuccio of Iowa City Public Defender's Office, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Janet M. Lyness, County Attorney, and Patricia A. Weir, Assistant County Attorney, for appellee State.

Anthony Haughton of Linn County Advocate, Inc., Cedar Rapids, for minor child.

Considered by Doyle, P.J., Bower, J., and Huitink, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**HUITINK, S.J.**

**I. Background Facts & Proceedings.**

Stacey is the mother of a child born in September 2007. In April 2011, the child was discovered wandering around outside a hotel unsupervised while Stacey was engaged in a domestic dispute. Stacey was arrested, and the child was removed from her care and placed with relatives. The following month, the child was adjudicated as a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(n) (2011) following stipulation of the parties.

Stacey has a history of involvement in relationships marked by domestic abuse. At the time the family came to the attention of the Iowa Department of Human Services (DHS), Stacey admitted to a history of physical and sexual abuse in her relationship. She also admitted to abusing prescription medication. Stacey has mental health issues and, following a substance abuse evaluation, was diagnosed with alcohol dependence.

In February 2012, the court ordered the State to file a petition to terminate Stacey's parental rights. But before the May termination hearing, Stacey began making progress in addressing her issues, and the termination hearing was continued. The court authorized a trial home placement, and custody was returned to Stacey in August 2012. Although concerns about Stacey's return to a volatile relationship began to surface as early as November 2012, by April 2013 it was hoped that her progress would continue and the CINA case could be closed in July 2013. These hopes were extinguished in May 2013 when Stacey was arrested on a felony domestic abuse assault charge.

On May 20, 2013, the State filed a motion to modify prior orders. A hearing was held on July 17 and August 28, 2013. On September 18, 2013, the juvenile court entered its order modifying its prior orders to place the child in the care of the relatives who had cared for her during her first removal. The court also waived the reasonable efforts requirement and scheduled a permanency hearing the next month. Following the permanency hearing, the court ordered the State to file a petition to terminate Stacey's parental rights.

The State filed its termination petition on October 14, 2013, and the case proceeded to a hearing on November 20, 2013. In its November 22, 2013, order, the juvenile court found that despite Stacey's claims, "it is highly likely" that she had resumed "her unhealthy, dysfunctional, and sometimes violent relationship" as evidenced by "her lack of employment . . . , her failure to take steps to keep the no contact orders in place, and her diminished participation in services." The court found the child "has experienced considerable loss, trauma, and abandonment" and "was physically mistreated by the mother." It further noted the "significant concerns" that the child "has experienced some form of sexual abuse, either directly or by exposure to sexual activity and/or pornography" given the child's expressed knowledge of sexual activity and her inappropriate, sexualized behaviors. The court concluded Stacey's parental rights should be terminated under sections 232.116(1)(g) (child adjudicated CINA, parental rights to another child terminated, parent continues to lack the ability or willingness to respond to services which would correct the situation, and additional time would not correct the situation) and (h) (child is three or younger, CINA, removed at least six months, and cannot be safely returned home) (2013).

**II. Standard of Review.**

The scope of review in termination cases is de novo. *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005). Clear and convincing evidence is needed to establish the grounds for termination. *In re T.P.*, 757 N.W.2d 267, 269 (Iowa Ct. App. 2008). Our primary concern in termination cases is the best interests of the child. *In re A.S.*, 743 N.W.2d 865, 867 (Iowa Ct. App. 2007).

**III. Modification of the Dispositional Order.**

Stacey first contends the juvenile court should not have been modified its prior orders in the September 2013 order because there was no material and substantial change in circumstances as they existed at the time of the prior dispositional orders. *See* Iowa Code § 232.103 (allowing the court to modify any dispositional order prior to expiration); *In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (stating a material and substantial change in circumstances is required for modification).

Clear and convincing evidence establishes a material and substantial change in circumstances occurred between the April 11, 2013 order continuing the prior dispositional orders without change and the September 18, 2013 order. In May 2013, Stacey was arrested for felony domestic abuse assault, and the DHS learned of the escalating conflict in her relationship, which the child witnessed. The child was removed from her care.

The child reported witnessing physical violence in the home and her mother striking her in the face and bottom and pulling her hair—claims substantiated by Stacey's domestic partner. The child also graphically described sexual acts she claimed Stacey engaged in with her and exhibited inappropriate,

sexualized behavior in foster care, which indicated she has been exposed to sexual acts or had been sexually abused. The child's therapist described the child as "sad and anxious" at her May 2013 therapy session.

Because the evidence shows a material and substantial change in circumstances warranted modification of the prior dispositional orders, we affirm on this issue.

**IV. Waiving Reasonable Efforts.**

Stacey also challenges the portion of the court's September 18, 2013 order waiving the reasonable efforts requirement. When a child is removed from the home, the State is normally required to make reasonable efforts to make it possible for the child to return safely to the home. Iowa Code § 232.103(5)(b), (7). However, the reasonable efforts requirement may be waived if the court finds the circumstances described in section 232.116(1)(i) are applicable. *Id.* § 232.103(12)(b). There are three circumstances described in this section:

> (1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.
> (2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.
> (3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

*Id.* § 232.116(1)(i). Stacey argues there is not clear and convincing evidence of a significant risk or imminent danger to the child or the conditions that led to the abuse or neglect of the child could not be corrected within a reasonable period of time.

We find the evidence supports the conclusion that abuse or neglect posed an imminent danger to the child. The child expressed knowledge of sex acts well in advance of her years, which indicated she witnessed such acts or was subjected to them. As a result, the child engaged in inappropriate, sexualized behavior. The evidence also shows the child was the victim of physical abuse at Stacey's hands. The child has already suffered mental and emotional trauma and distress as a result of this abuse or neglect.

The evidence further shows the offer or receipt of services would not correct the conditions that would lead to the abuse or neglect within a reasonable time. Two years after the CINA adjudication, and in spite of the services she had been offered and participated in, Stacey was again arrested for domestic abuse assault. In her testimony at the modification hearing, Stacey positioned herself as the victim of domestic abuse rather than acknowledging her role in it. She pointed the blame at her partner and at the court system, refusing to accept any responsibility for the escalating conflict in the home. She also lacked insight into how her involvement in an abusive relationship impacts the child, claiming the child would "take something minor and make it into something big."

Clear and convincing evidence shows the circumstances described in section 232.116(1)(i) existed at the time of modification. Accordingly, we affirm the waiver of reasonable efforts.

**V. Grounds for Termination.**

Stacey also contends the State failed to prove the grounds for termination by clear and convincing evidence. Although she challenges both statutory grounds for termination, we need only find grounds to terminate under one of the

sections cited by the juvenile court to affirm. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Specifically, she disputes the sufficiency of the evidence the child could not be safely returned to her custody as provided in section 232.102, as required under section 232.116(1)(h), and the offer or receipt of services would not correct the conditions that led to the abuse or neglect of the child within a reasonable time, as required under section 232.116(1)(i).

In its termination order, the juvenile court noted "nothing has changed for the better" since the modification order was entered on September 18, 2013. Stacey was awaiting trial on felony domestic abuse assault charges, was unemployed, and was less involved in services. Despite Stacey's claim she was ending her relationship, the juvenile court found it was "highly likely" the relationship had resumed. The evidence supports this finding, as does Stacey's past behavior. *See In re M.H.*, 367 N.W.2d 275, 278 (Iowa 1985) ("[N]ot only may the court look at the past behavior of the parent, but . . . it is an important factor."). There is no doubt the child cannot be safely returned to Stacey's care at this time.

**VI. Exceptions.**

Once a ground for termination has been proved under section 232.116(1), and the factors under section 232.116(2) favor termination, the court should then decide whether it need not terminate the relationship for any of the reasons set forth in section 232.116(3). *In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). Stacey contends her parental rights should not be terminated because the child is in the custody of a relative and because there is clear and convincing evidence

that termination would be detrimental to the child due to the closeness of the parent child relationship. *See* Iowa Code § 232.116(3)(a), (c).

There is no evidence to substantiate Stacey's claim that termination would be detrimental to the child due to their close bond. The evidence establishes that Stacey has had no contact with the child since her removal in May 2013 and that the child harbors anxiety and anger toward her mother. Although the child's therapist testified that even children who are badly abused by their parents long for contact, the child never stated a desire to see Stacey or stated she loved her. Instead, she told the therapist Stacey was mean and indicated she wished to remain in her foster home.

The child is in the care of a relative, and therefore the factor necessary to avoid termination under section 232.116(3)(a) has been met. However, an appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). "The child's best interests always remain the first consideration." *Id.*

We find the child's best interests require termination. The child's therapist noted the child's life had been "full of chaos" and that the child "needs a healthy and stable environment with support for caregivers as she recovers from her many traumas and develops a sense of safety and security." The child's foster family provides her with this stability. This stability will be threatened if Stacey's parental rights are not terminated given the tension between Stacey and the relatives the child is placed with. After considering the foster family's suitability as an adoptive placement, the child's need for permanence, and the child's lack

of bond with her mother, we find termination is in the child's best interests; termination will not be avoided simply because the child was placed with relatives.

For the foregoing reasons, we affirm the order terminating Stacey's parental rights.

**AFFIRMED.**