# IN THE COURT OF APPEALS OF IOWA

No. 24-0869
Filed August 7, 2024

**IN THE INTEREST OF B.H.,**
**Minor Child,**

**B.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, Judge.

A father appeals the adjudicatory and dispositional orders in a child-in-need-of-assistance proceeding. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Danielle M. Ellingson of Noah, Smith, Sloter & Ellingson PLC., Charles City, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Carrie J. Rodriguez, Garner, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

A father appeals the adjudicatory and dispositional orders in a child-in-need-of-assistance (CINA) proceeding.  He challenges the sufficiency of the evidence supporting each ground for the CINA adjudication, the removal of the child from his custody, and the suspension of visitation.  We affirm the CINA adjudication under Iowa Code section 232.96A(1), (2), (3)(b), and (4) (2024) and the child's removal.  We reverse the portion of the dispositional order prohibiting contact between the father and child, and we remand to the juvenile court to order supervised visitation at the discretion of the Iowa Department of Health and Human Services (HHS).

**I. Background Facts and Proceedings.**

The CINA proceedings involve a child born in 2016.  The child lived with the mother for the first few years of life, with a 2018 decree establishing child custody.  After the father petitioned to modify custody in 2019, the mother agreed to place the child in the father's physical care.  The juvenile court terminated the mother's parental rights to four other children in 2022.

The father has a history of schizophrenia and a diagnosis of schizoaffective disorder, bipolar type, with acute exacerbation insomnia.  He has complied with taking medication since June 2021.  But there was a change to his prescribed medications in February 2024 that brough on a manic episode.  During this episode, the father did not sleep for eight or nine days and experienced paranoid thoughts.  The father asked the paternal grandfather to care for the child and entered inpatient treatment.

While in a manic state, the father told the mother that he had sexual contact with the child two or three months earlier.[1]  He disclosed that there was vaginal penetration.  The father sent the mother text messages in which he apologized for his actions and asked her not to tell anyone about it.

The mother reported the father's statements to HHS.  She recalled that around the time the alleged abuse occurred, the child experienced vaginal bleeding.   The child's medical records show that the child had a medical examination in November 2023 after experiencing unexplained bleeding during urination.  The report from that medical visit notes there was irritation in the child's vaginal area without a rash.

Based on the report of sexual abuse and the father's inpatient hospitalization, as well as concerns about the mother's ability to care for the child, the juvenile court removed the child from the parents' custody.  It granted HHS legal custody and placed the child in the temporary care of the paternal grandparents.  The State petitioned for a CINA adjudication.

While awaiting the CINA hearing, HHS investigated the allegations of sexual abuse.   When the child protection worker contacted the father, he denied wrongdoing before the worker even informed him of the allegation.  A forensic interviewer at the child protective center interviewed the child, but the child was unwilling to discuss the allegations. The child protection worker found a significant amount of circumstantial evidence to support that sexual abuse occurred.  But because the father made the claim while actively psychotic, she determined that

---

[1] According to the mother's testimony, the father stated that the child sat in his lap "and she forced him to rape her."

"[i]t cannot be proven whether this disclosure was true or the result of a delusion," and the child abuse assessment summary found the allegation was "not confirmed." Still, the worker recommended a CINA adjudication and the child's removal from the parents' custody as necessary to protect the child. She recommended continuing the child's placement with the paternal grandparents while resuming interactions between the father and the child.

The juvenile court held the adjudicatory hearing in April and found the State proved the grounds for a CINA adjudication under Iowa Code section 232.96A(1), (2), (3)(b), and (4). It continued the child's placement with the grandparents but found HHS's request to resume contact between the father and the child was premature based on the father's admission and credible circumstantial evidence of sexual abuse.

The juvenile court held a dispositional hearing in May. HHS continued its recommendation for the child's removal and placement with the paternal grandparents, but it asked for discretion to grant visits between the father and the child. The guardian ad litem (GAL) recommended contact between the father and the child only after contact is determined to be safe. Noting the child's first visit with a therapist was the day before the hearing and the father had not scheduled the psychosexual evaluation ordered by the court, the GAL did not believe there had been sufficient progress to begin visits between the child and the father.

The juvenile court entered a dispositional order finding the child remains a CINA and continuing the child's removal. The court expressed concern about the parties' compliance with its orders and denied contact between the father and the child:

> Given the admissions of sexual abuse by Father against [the child] and the very early stages of therapy for her and Father not even being evaluated yet, even if [the child] had a dozen attorneys advocating for visits to begin, that request would be denied. SAFETY of the child is the most important purpose of this proceeding and it is expected that [HHS] and everyone around this child will comply with that expectation. This child will not see her abuser until we know the extent of what we are dealing with.
>
> The problems for which the Court became involved have not resolved.

The father appeals.

## II. Discussion.

We review CINA proceedings de novo.  *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021).  We give weight to the juvenile court's fact findings, although they are not binding.  *See id.*  Our primary concern is the child's best interests.  *See id.*

### A. CINA Adjudication.

The father first challenges the sufficiency of the evidence showing the grounds for the CINA adjudication.  The juvenile court may adjudicate a CINA if clear and convincing evidence shows that the grounds for the adjudication exist and the child requires the court's aid.  Iowa Code § 232.96(9).  The State bears the burden of proving the grounds for adjudication by clear and convincing evidence, meaning "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *In re N.C.*, 952 N.W.2d 151, 153 (Iowa 2020).  Because "[t]he underlying grounds of adjudication in [CINA] cases have important legal implications beyond the adjudication," we review the sufficiency of the evidence supporting all four grounds found by the juvenile court.  *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).

The father contends that the State failed to provide clear and convincing evidence to show that each ground for the CINA adjudication applies to him. But at least three grounds for the CINA adjudication concern the mother. The juvenile court found that the mother had no contact with the child for seven or eight months before HHS involvement, which satisfies the CINA adjudication for desertion under section 232.96A(1).[2] *See* Iowa Code § 232.2(15) (defining desertion to mean "the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship," which "is evidenced by the lack of attempted contact with the child or by only incidental contact with the child"). It found "[the mother's] residence with a person convicted of child endangerment makes the physical abuse of [the child] imminent," satisfying the requirement for adjudication under section 232.96A(2). The court also noted the mother's home "is not clean enough for visits to occur there" and her "history of unsafe parenting" led to termination of her parental rights to four children. The mother also admits that her husband physically abused the child during the first three years of her life. On this basis, there is clear and convincing evidence showing the child is imminently likely to suffer harmful effects because of the mother's failure to exercise a reasonable degree of care supervising the child, which meets the requirement for the CINA adjudication under section 232.96A(3)(b).

---

[2] We note that the record indicates the mother saw the child at Christmas, which contradicts the finding that the mother had *no* contact with the child for more than six months. Regardless, the mother had minimal involvement in the child's life before HHS involvement, supporting a CINA adjudication under section 232.96A(1).

The juvenile court also found the child meets the definition for a CINA adjudication under section 232.96A(4), which requires clear and convincing evidence that "[t]he child has been, or is imminently likely to be, sexually abused by the child's parent." The father claims there is no evidence supporting a claim of sexual abuse, noting that the child did not report abuse during the interview at the child protective center and the HHS investigation did not confirm the allegations of sexual abuse. But the juvenile court cited two crucial factors in finding clear and convincing evidence that the father sexually abused the child. First, the father told the mother that he sexually abused the child. Second, despite the father's claim his report was the result of a delusion during his manic episode, there is corroboration from medical records that note the child had abnormal vaginal bleeding and irritation in her vaginal area during the period in which the father alleged the abuse occurred.

In determining that sexual abuse occurred, the juvenile court also considered that the child neither confirmed nor denied the abuse during her interview at the child protective center child. The child abuse assessment summary recounts what occurred during that interview:

> [The child] first had a medical exam where she did disclose that she had an owie on her privates recently, but states that she does not know how or where she got it. [The child] states that she was taken to the doctor for this concern. [The child] identified that this was like a cut on her privates, but she is unsure how she received it.
>     . . . .
> [The child] answered rapport building questions quickly and fluidly. She discussed enjoying spending time with all of her parents. [The child] then hesitated for extended periods and looked to the camera in the room when asked questions about her privates. [The child] was reluctant to answer questions regarding time spent in close physical proximity to her father.

> [The child] was asked if anything has happened to her that she is not yet ready to talk about. She stated that she is not ready to talk about things with girl private parts.

The juvenile court stated that because the paternal grandparents brought the child to the interview, "the obvious concern is that [the child] did not want to speak poorly about Father if they were listening." It concluded that the child's "refusal to discuss contact with Father at an appointment her grandparents brought her to supports the allegation" of sexual abuse.

Finally, the juvenile court noted concern about the father's admission that "something" happened when he was twelve that led to a delinquency adjudication for sexual abuse. It found the father's refusal to elaborate on the details "is even more suspicious." It also expressed concern about the father refusing the court's aid, which it deemed "very concerning and likely an attempt to escape responsibility for his sexual abuse of [the child.]"

We begin by noting that the evidence of sexual abuse in this case differs from others in which we have found clear and convincing evidence to support a CINA adjudication. Often, those cases involve a child victim disclosing sexual abuse, which the perpetrator denies. *See, e.g.*, *N.C.*, 952 N.W.2d at 155 (finding "a child's credible report of sexual abuse to amount to clear and convincing evidence sufficient to support adjudication" based on sexual abuse); *In re L.K.S.*, 451 N.W.2d 819, 820, 823 (Iowa 1990) (finding clear and convincing evidence supported CINA adjudication based on sexual abuse where child credibly alleged the abuse occurred despite the perpetrator's denials). This case presents that situation in reverse, with the father admitting sexual abuse and the child unwilling to confirm or refute the allegations. If that was all the evidence before us, we might

find it easier to dismiss the father's confession as the mere product of his manic episode. But a report in the child's medical records, made during the period in which the abuse allegedly occurred, corroborates the father's confession. We also consider that the father previously committed a delinquent act that would constitute sexual abuse. *See In re J.S.*, 846 N.W.2d 36, 43 (Iowa 2014) (observing that a child is a risk of future sexual abuse when there are "specific prior instances of sexual or physical abuse committed by a caregiver"); *In re M.H.*, 367 N.W.2d 275, 278 (Iowa Ct. App. 1985) ("[N]ot only may the court look at the past behavior of the parent, but . . . it is an important factor."). Adding to our concern is the father's attempt to lay blame on the child when describing what occurred, stating that the child "forced him to rape her." Altogether, the evidence crosses the threshold of clear and convincing. Because sufficient evidence supports each ground, we affirm the CINA adjudication under section 232.96A(1), (2), (3)(b), and (4).

**B. Removal.**

The father next challenges the child's continued removal from his custody. He claims that removal is not the least restrictive disposition under the circumstances because his mental health has returned to his baseline. The problem with the father's argument is that it presupposes he did not sexually abuse the child. Having determined that clear and convincing evidence supports the CINA adjudication under section 232.96A(4) based on the finding that the father sexually abused the child, it is necessary to continue the child's removal from the father's custody to ensure the child's safety. *See* Iowa Code § 232.102(8) ("The placement shall be terminated and the child returned to the child's home if the court

finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.96A.").

**C. Visitation.**

Finally, the father challenges the decision to suspend visitation between the father and the child. Again, he argues that the court did not make the least restrictive disposition available when it suspended parental visitation. The father notes that HHS believes that visitation would not harm the child and requested visitation at its discretion.

"Visitation between a parent and child is an important ingredient to the goal of reunification." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). But the court may limit the nature and extent of parental visitation if doing so is in the child's best interests. *Id.*

The juvenile court found that because the child had just begun therapy and the father has not submitted to the court ordered psychosexual evaluation, any form of visitation would be unsafe for the child. We disagree. The permanency goal is to return the child to the father's custody. The father denies sexually abusing the child, and the child has asked when she can see the father. We have found supervised visitation appropriate in similar circumstances. *See, e.g.*, *In re S.W.*, 469 N.W.2d 278, 281 (Iowa Ct. App. 1991); *In re S.V.*, 395 N.W.2d 666, 668 (Iowa Ct. App. 1986). Restricting the father to supervised visitation, which eliminates the risk of adjudicatory harm to the child, maintains the parent-child bond, and serves the child's best interests. We therefore reverse the portion of

the dispositional order prohibiting contact between the father and child, and we remand to the juvenile court to order supervised visitation at HHS's discretion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**