In the Interest of M.R. and M.R., Minor Children,

J.R., Mother, Appellant.

No. 91–1688.

Court of Appeals of Iowa.

May 28, 1992.

Stephen T. Brennecke, Marshalltown, for appellant mother.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

Michael and Michelle are three-year-old fraternal twins. R.M., their father, and J.R., their mother, never married. R.M. lives in a group home facility and acknowledges his inability to care for the twins. J.R. was not yet eighteen when she bore the twins, and she has only an eighth grade education. She has been diagnosed with an unspecified personality disorder and borderline intellectual functioning. Her intelligence quotient translates to a mental age of approximately fourteen or fifteen.

For the first eighteen months of their lives, the twins lived with J.R. in an apartment. In April 1990 the Department of Human Services received a child abuse report alleging J.R. was neglecting the twins. Investigators acting on the report found the twins and their environment extremely filthy and unsanitary.

The apartment was littered with clothing, cans, papers, cigarette butts, and pieces of food. There were cat feces all over the floor, and the stench of urine permeated the apartment. There were bottles of sour and curdled milk in, under and around the twins' cribs. Paint was peeling off the walls by the cribs leaving paint chips on the twins' mattresses. The beds had no sheets. A soiled Kotex was found in the twins' bedroom beside a large pile of dirty diapers and a puddle of milk. Dirty diapers were strewn throughout the living room and on the table. The home was cluttered with dirty dishes; even the bathtub was filled with dishes.

The twins' health and hygiene had likewise been neglected. Both were caked with dried feces, and Michelle had such a severe diaper rash she had developed open sores between her legs and on her bottom and vagina. J.R. had no ointment for the rash. When dropped off at daycare, both twins were filthy, smelled unclean, and carried sour-smelling bottles of milk. Both had headlice and were often dressed inappropriately for cool weather. Finally, their height, weight and developmental statistics were well below normal. The cause of their developmental problems was later determined to be environmental, and their condition was accordingly diagnosed as failure to thrive. A founded denial of critical care report resulted, and a homemaker health aide continued to work with the family for approximately six weeks before services were terminated and the Department of Human Services initiated juvenile court involvement.

On June 26, 1990, the State filed petitions alleging the twins were children in need of assistance. J.R. stipulated the twins were children in need of assistance pursuant to Iowa Code section 232.2(6)(g), and after a dispositional hearing, the twins were placed in family foster care. In-home visitation was ordered to take place in J.R.'s home in conjunction with the visits of the homemaker health aide. In addition, J.R. agreed to obtain a physical and mental examination to determine what services were most suited to her needs. Based on the results of the mental examination, "hands-on" parenting skills training was recommended.

On March 5, 1991, a six-month review hearing was held, and the juvenile court found J.R. had failed to show the children could be returned to her home without suffering harm. J.R. had moved into an apartment with her parents, and service providers testified the shared apartment was filthy. J.R. had made little progress in therapy and had discontinued treatment in January 1991. Her therapist described her as immature, vague, apathetic, and lacking any focus.

By February 1991, J.R. had completed only four of approximately twenty-seven sections in her parenting skills course, and the testimony at the termination hearing established she would need another year of training simply to obtain minimal parenting and housekeeping skills. J.R. remained unable to provide a safe, healthy and hygienic environment or to prepare nutritious meals for the twins.

J.R.'s new apartment was extremely dirty. There were animal feces on the floor and ground into the carpet, and the apartment reeked with the odor of urine and feces. When the twins were fed by J.R., their diet consisted primarily of cookies, crackers, cake, macaroni and cheese, hot dogs, ravioli, Spaghetti–O's, pop and Kool Aid. J.R. failed to properly supervise or discipline the twins, allowing them to run through the apartment and play in the unsafe windows. She appeared to have no control over them as they acted out inappropriately during supervised visits. Finally, she failed to properly attend to the twins' health and hygiene needs. Despite the workers' repeated instructions to J.R. concerning frequent diaper changes, bathing and use of ointment, J.R. returned Michelle from unsupervised visitation in January 1991 with a severe, untreated diaper rash.

The State filed a termination petition, and after a hearing, the juvenile court terminated the rights of both parents relying on Iowa Code section 232.116(1)(g) (1991). The father appeared at the hearing and acknowledged he could not care for the children. He did not offer any resistance to the State's petition for termination, and he has not appealed.

J.R. has appealed. She challenges the sufficiency of the evidence to support termination of her parental rights, arguing the State failed to establish by clear and convincing evidence the children could not be returned to her custody. She also contends the juvenile court failed to properly balance her interests with those of the children and the State. A proper balancing of these interests, she asserts, would dictate the twins be placed in her home. We disagree with both arguments on appeal and affirm.

Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92. Central to our analysis are the immediate and long-term best interests of the children. *In re T.D.C.*, 336 N.W.2d 738, 740 (Iowa 1983).

We are not persuaded by J.R.'s first argument. The record before us leaves no doubt but that the State has met its burden of proof. The State proved by clear and convincing evidence the twins could not be returned to their mother's custody at the time of the hearing. *See* Iowa Code § 232.-114(5)(c) (1991); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The children have been diagnosed as failure to thrive,

meaning the environment J.R. provided the twins was the cause of their developmental problems. All persons who have worked with J.R. in an attempt to teach her minimum acceptable parenting skills testified there had been little or no change in the home environment or in the care, discipline or supervision J.R. had given to the children. J.R.'s past and present performance, indicative as it is of her probable future performance, demonstrates she would not provide adequate food, shelter, stimulation and supervision for the twins. We are convinced the twins would once again become subject to CINA adjudication were they placed back in J.R.'s custody. *See In re R.M.*, 431 N.W.2d 196, 199–200 (Iowa App.1988).

■ Neither are we persuaded by J.R.'s second argument. J.R. argues she should be given more time to mature and learn proper parenting skills because she is a teenage mother and her immaturity stems from her age. We recognize the right of a parent to raise her children is fundamental. *In re M.H.*, 367 N.W.2d 275, 278 (Iowa App.1985). Of course, a parent will be found to have forfeited this right by engaging in certain conduct. *In re Dameron*, 306 N.W.2d at 745. Counterbalancing the parent's right is the State's duty to assure that every child within its borders receives adequate care and treatment. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The State must intercede when the parent abdicates her responsibility to properly provide for the children's needs. *In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988). "Every child deserves a safe, healthy and stimulating environment in which to grow and mature." *In re J.W.D.*, 456 N.W.2d 214, 217 (Iowa 1990).

The Iowa legislature "has carefully crafted a legislative framework for State intercession into the parent-child relationship while protecting wherever possible the integrity of the family unit." *In re I.L.G.R.*, 433 N.W.2d at 689. Surely the law demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills, *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987), *cert denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988), but children need not endlessly await the maturity of their natural parents. *In re T.D.C.*, 336 N.W.2d at 744. The termination statutes provide the interval for which patience with parents shall last.

Iowa Code section 232.116(1)(g)(3) (1991), the statute under which J.R.'s parental rights were terminated, provides an interval of between six and twelve months. That is, the statute requires the State to show

[t]he custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

Iowa Code § 232.116(1)(g)(3) (1991).

This reasonable limitation is important because patience with parents can "quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). To continue to keep children in temporary foster homes is not in their best interests. *In re J.L.P.*, 449 N.W.2d 349, 353 (Iowa 1989). Children should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990); *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). When the time interval reaches twelve months, the case must be viewed with a sense of urgency. *In re A.C.*, 415 N.W.2d at 614.

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and

permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*Id.* at 613.

We find no provision in the statute purporting to extend the time interval for teenage parents, and we decline to furnish one. The Iowa legislature has determined that a child's rights in this regard are not a function of his of her parent's age. Termination should occur if the statutorily prescribed interval has elapsed and the parent remains unable to care for the children. *In re T.D.C.*, 336 N.W.2d at 744.

For all the reasons stated, the judgment of the juvenile court is affirmed.

The costs of this appeal are taxed to J.R.

AFFIRMED.