# IN THE COURT OF APPEALS OF IOWA

No. 13-1796
Filed February 19, 2014

**IN THE INTEREST OF C.S.,**
 **Minor Child,**

**B.M., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachel Seymour, District Associate Judge.

A mother appeals from an order terminating the parental rights between her and her child. **AFFIRMED.**

Bryan J. Tingle, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Jennifer Galloway, Assistant County Attorney, for appellee.

James Mayer of Law Offices of Michael H. Said, P.C., Des Moines, for father.

Michael Bandstra, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

A mother, Brooke, appeals an order terminating the parental rights between her and her child, C.S., pursuant to Iowa Code section 232.116(1)(d), (e), and (h) (2011). At the termination hearing, the father, Seth, consented to termination of his parental rights, and he has not appealed. We review de novo an order terminating parental rights. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See id.*

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.* In this case, Brooke does not challenge the evidence supporting the grounds for termination of her parental rights. Instead, she contends that termination of her parental rights is not in the child's best interests and that a statutory exception should preclude termination.

We begin our analysis with the first issue raised—whether termination of Brooke's parental rights is in C.S.'s best interests. In making the determination of whether termination of parental rights is in the best interests of the child, the

court must consider the relevant statutory factors. *See* Iowa Code § 232.116(2). Further:

> In seeking out those best interests, we look to the child's long range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.

*In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997)).

C.S. was removed from the custody and care of the parents in August 2012—a little more than one month after C.S.'s birth. At the time of removal, Brooke was sixteen years old and Seth was eighteen years old. Brooke consented to removal because of her substance abuse, her physically aggressive behavior toward others, the domestic violence between her and Seth, and her inability to otherwise care for the child. She stated that Seth frequently threatened her and threatened to kill the child. In addition to the threats of violence, there was, in fact, recurring physical violence between Brooke and Seth that created a risk of harm to C.S. The court entered a no-contact order prohibiting contact between Brooke and Seth.

In the fall of 2012, C.S. was adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n). Brooke stipulated to the adjudication. She had relapsed with her substance abuse. She had a physical altercation with another student at her high school. A few weeks after the altercation, she broke out the same student's windshield and was placed on probation under the supervision of juvenile court services. Seth had just pleaded

guilty to domestic assault and violating the no-contact order. It was re-explained to Brooke that her decision to remain in a relationship with Seth would delay or prevent reunification with C.S. because neither she nor Seth had adequately addressed domestic violence issues. Brooke acknowledged that continuing her relationship with Seth could prevent reunification with her child.

In February 2013, the juvenile court held a permanency hearing. Brooke had made considerable progress on almost all fronts. She had successfully completed substance abuse treatment and provided negative drug tests. She had completed a mental health evaluation and was engaged in therapy. She had completed her parenting classes, and her parenting skills had greatly improved. Brooke had exercised visitation with C.S. and demonstrated appropriate parenting skills. The one area where Brooke had not made progress related to her relationship with Seth. While Brooke was making progress with her therapist in gaining an understanding of domestic abuse, generally, she was not able to discontinue her relationship with or otherwise set boundaries with Seth. She continued to intentionally violate the no-contact order to further her relationship with Seth.

Brooke's conduct deteriorated in the spring of 2013. She started skipping school and violating curfew. She violated the terms and conditions of her probation, and a warrant issued for her arrest. Rather than turn herself in, Brooke absconded from supervision for two weeks and stayed with Seth. Brooke ultimately turned herself in after Seth became physically abusive toward her. As a result of violating her probation, she was placed at the Bridge House in

Davenport. When this matter came on for hearing on the State's petition to terminate parental rights, Brooke remained at the Bridge House. She admitted that C.S. could not be returned to her care at the time of the hearing. She admitted the earliest C.S. could potentially be returned to her care was approximately eight months from the date of the termination hearing.

Given the foregoing, we cannot say it is in the child's best interests to delay termination. *See* Iowa Code § 232.116(2). The child has been removed from the mother for all but the first month of his life. The mother has never progressed to the point of having unsupervised visitation with the child. The mother has seen the child on only one occasion in the several months prior to the termination hearing. The mother concedes that she cannot now or in the immediate future take custody and care of the child. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (noting problems that rendered parent unfit to care for children for nearly two years and testimony that it would be almost another year before there was even potential to return child to parent militated in favor of termination). Brooke's inability to take custody of C.S. at the time of the termination hearing is a direct result of her own unlawful conduct in absconding from probation. Since the time of removal Brooke has been unable to correct the behaviors that lead to removal: the termination report provided to the court notes that Brooke does well for a period of time but her "downfall continues to be that she goes back to her volatile relationship with Seth and stops doing all of the things that she needs to be doing. Brooke has continuously chosen Seth over making the right decision for her child."

Although Brooke contests termination on appeal, at the termination hearing she conceded that it is in C.S.'s interest to terminate her parental rights. She agreed that C.S. "has been kind of waiting in limbo for [her] to come to this point." She also agreed that C.S. should not "have to wait longer for [her] to demonstrate to the Court that [she] has gained insight as to who [she] associates with that has substance abuse issues." She agreed that it would be unfair to C.S. for him to continue to wait until she can assume his care. We agree. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of the children to continue to keep them in temporary foster homes while the natural parents get their lives together."); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages."); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable."). The mere fact that Brooke is a teenager does not give her additional time to correct the conduct giving rise to termination:

> We find no provision in the statute purporting to extend the time interval for teenage parents, and we decline to furnish one. The Iowa legislature has determined that a child's rights in this regard are not a function of his or her parent's age. Termination should occur if the statutorily prescribed interval has elapsed and the parent remains unable to care for the children.

*In re M.R.*, 487 N.W.2d 99, 103 (Iowa Ct. App. 1992).

Brooke argues that the court need not terminate her parental rights because C.S. is in the custody and care of his paternal great uncle and aunt for pre-adoption services. *See* Iowa Code § 232.116(3) (providing the court need

not terminate the relationship if a "relative has legal custody of the child"). This provision is permissive and not mandatory. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997*), overruled on other grounds by In re P.L.*, 778 N.W.2d 33 (Iowa 2010). C.S. has thrived while in the care of his great uncle and aunt. He is developmentally on target and reaching the appropriate milestones at the appropriate times. His uncle and aunt are willing to adopt him. We conclude this statutory ground should not prevent termination of Brooke's parental rights under the facts and circumstances of this case. *See C.K.*, 558 N.W.2d at 174 ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration.").

Accordingly, the judgment of the district court is affirmed.

**AFFIRMED.**