# IN THE COURT OF APPEALS OF IOWA

No. 21-1155
Filed November 3, 2021

**IN THE INTEREST OF W.T.,**
**Minor Child,**

**T.T., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Clay County, Andrew J. Smith, District Associate Judge.

A young mother appeals the termination of her parental rights. **AFFIRMED.**

Lisa K. Mazurek of Miller, Miller, Miller, P.C., Cherokee, for appellant mother.

Thomas J. Miller, Attorney General and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm P.C., Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Despite being offered services for close to a year and a half, this teenage mother took few steps to establish a safe and stable living environment for her two-year-old child W.T., choosing to instead live by the maxim, "I'll do it tomorrow." Because tomorrow is too late for her child, we find termination was proper under Iowa Code section 232.116(1)(h) (2021) and a six-month extension was not warranted. Thus, we affirm the termination order.

## I.    *Background Facts and Proceedings*

W.T. was five months old when he tested positive for marijuana. He was living with his mother, then age sixteen, as well as his maternal grandmother and uncle. During a child abuse assessment by the Iowa Department of Human Services (DHS) in April 2020, the grandmother tested positive for marijuana and methamphetamine, and the uncle tested positive for marijuana. Although the mother tested negative at the time, she admitted to a history of marijuana use. Given the baby's drug exposure, DHS developed an initial safety plan requiring the family to participate in family-centered services, including weekly team meetings, therapy, and drug testing.

Later that month, the mother and uncle were both charged with possession of alcohol as minors. The mother had W.T. with her when she was drinking at a friend's house. As a result, DHS amended the safety plan to include mandatory substance-abuse and mental-health evaluations. When questioned about her substance use, the mother told service providers that she used marijuana and alcohol to cope with the untimely death of her father. On top of that, she alleged that she had been in an abusive relationship with the child's father, who was

twenty-one years old when she became pregnant with W.T. at age fifteen.[1]  She also reported a history of mental illness, including a diagnosis of attention deficit hyperactivity disorder (ADHD).  While she had been prescribed medication to treat her ADHD, she was no longer taking it.

By the end of summer, the mother had taken no steps to address her mental-health or substance-abuse issues.  She and her mother canceled multiple appointments for evaluations even though service providers offered to help them with scheduling and drive them there.  There were also ongoing concerns about the mother's ability to adequately supervise W.T. and provide for his basic needs.  According to several reports, the mother needed help identifying unsafe people and situations for both herself and the child.

A prime example of this occurred in December when a report was made that the mother was using marijuana with W.T. in the home.  Just hours after agreeing to another safety plan with DHS to prevent her child's removal, the mother was in a vehicle that was stopped by police for erratic driving.  A dab of marijuana was found on the floorboard in the back of the car, where W.T. was in his car seat.  The driver of the vehicle, who did not have a driver's license, was arrested for operating while intoxicated.  The mother admitted to using marijuana a couple of hours earlier.  As a result, the juvenile court removed W.T. from the mother's care and placed him into foster care where he has since remained.

---

[1] Due to the age difference between the parents, the father was charged with sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code sections 709.1 and 709.4(1)(b)(3)(d).  He pleaded guilty in October 2020, just shy of W.T.'s first birthday.  The father's involvement in the case was sporadic as he was incarcerated off and on for probation violations related to the conviction.  He has not appealed the termination of his parental rights.

The juvenile court adjudicated W.T. as a child in need of assistance (CINA) in January 2021. The court then ordered the mother to complete a substance-abuse evaluation, follow through with all recommended mental-health services, submit to drug testing, attend family team meetings, and cooperate with services focused on improving her parenting skills as well as "preparing her to be more independent." The main goals of those services included helping the mother obtain her high school diploma, find a job, get her driver's license, and secure her own housing.

Following W.T.'s removal, the mother seemed to make progress toward reunification. She complied with drug testing, maintained sobriety, and had positive interactions with W.T. during visits. And she finally obtained mental-health and substance-abuse evaluations. But both her progress and involvement soon waned. The mother failed to provide a complete history to her selected mental-health evaluator. The juvenile court directed her to obtain a new evaluation, but she never did. She attended only a handful of substance-abuse treatment sessions, one in April, two in May, and one in June. She became uncooperative with drug testing, missing multiple random tests and twice refusing the caseworker's requests for samples because her mother was not present. She was noticeably less attentive during visits with W.T., focusing more on her phone than spending time with him.

Given that regression, the State petitioned to terminate the mother's parental rights under Iowa Code section 232.116(1), paragraphs (d), (e), and (h). In late July, the juvenile court held a concurrent permanency and termination hearing. *See In re J.L.*, No. 20-1546, 2021 WL 1661235, at *2 (Iowa Ct. App. Apr.

28, 2021) (reiterating that permanency and termination hearings may be held at same time). Both DHS and the guardian ad litem recommended termination of parental rights. The court agreed after finding clear and convincing evidence to support termination under section 232.116(1)(h).

In declining to grant a six-month extension for reunification, the juvenile court told the mother at the termination hearing that "[i]t's always tomorrow. If the things that you say that you're going to do tomorrow or next Monday or the following week, if they had been done in this last month, then I would have good cause to give you an additional six months." Expounding on this in its written ruling, the court reasoned:

> Throughout this case, the concern boils down to whether [the mother] can demonstrate that she is capable of making decisions which place [W.T.'s] needs at the forefront and do not place him at risk. It is evident that nothing has changed since the implementation of voluntary services in March 2020.

The mother appeals those rulings.

## II. Analysis

We review termination orders de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). The State bears the burden of establishing the grounds for termination by clear and convincing evidence. *Id.* In termination cases, we generally follow a three-step analysis, addressing the (1) statutory grounds for termination, (2) child's best interests, and (3) statutory exceptions to termination. *See* Iowa Code § 232.116(1)–(3).

Here, we start and end our analysis with the first step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we need not review any step of the three-step analysis not challenged on appeal). The mother raises only two issues on

appeal—whether the State proved the ground for termination under section 232.116(1)(h) and whether the juvenile court should have given her an extension of time to work toward reunification. We will address each issue in turn.

### A. Statutory Ground for Termination

In challenging the termination of her parental rights, the mother argues there was not clear and convincing evidence that W.T. could not be returned to her care by the time of the July 2021 hearing. *See* Iowa Code § 232.116(1)(h)(4). She insists her "home was safe" and "she was willing and able to continue to engage in substance abuse treatment." Recognizing her lack of follow-through with appointments, she minimizes those concerns by adding that "she was largely reliant upon others to provide rides to appointments and to assist her with rescheduling." She also excuses her noncompliance with drug testing as "simply obeying her mother's directives."[2]

Like the district court, we are unpersuaded by her contentions. At the time of the hearing, the mother was in no better position to safely care for W.T. than when DHS intervened over a year ago. It is clear from the record the mother's lack of progress stemmed from her resistance to services and continued denial of her mental-health and substance-abuse issues. For fifteen months, service providers repeatedly urged her to seek therapy and complete the required evaluations. Yet she refused based on her subjective belief that she did not need treatment. As a result, it took her a full year to complete mental-health and substance-abuse

---

[2] We note the mother was given an opportunity early on in this case to move into a foster home where W.T. could have been placed with her. She refused to do so because she felt uncomfortable "staying at somebody's house that I don't know."

evaluations. While she did recently begin seeing a substance-abuse counselor, the mother's inconsistent attendance and failure to comply with drug testing reflect her overall lack of commitment throughout the case. What's more, she never progressed beyond semi-supervised visits. *Cf. In re B.M.*, No. 18-1029, 2018 WL 4638398, at *6-7 (Iowa Ct. App. Sept. 26, 2018) (reversing termination where young mother complied with DHS recommendations for substance-abuse and mental-health treatment and progressed to overnight visits at her parents' home where she was living).

The mother took no meaningful steps to become more independent either. During her testimony, she reiterated her plans to obtain her GED, move into her own apartment, and be financially stable. The mother acknowledged she had not done anything to accomplish those goals even though she admitted, "I have nothing else to do." In her view, her failure to do so did not affect her ability to safely care for W.T. She explained: "I plan on getting my own place. I'm looking at an apartment, the same apartment complex that my mom lives at. I'm getting another job, so I'll be working two jobs. I'll have two incomes coming in. I can take care of him safely." She gave the same response when asked about her lack of a driver's license. Rather than explaining why she did not have one yet, she replied: "I plan on getting it when I turn 18." Based on this record, we find clear and convincing evidence that the mother "was not prepared to assume a parenting role at the time of trial." *See In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020).

The mother suggests her young age should be a mitigating factor in deciding whether termination is appropriate. But as the guardian ad litem observed, "I understand that she's 17, but nevertheless she's a mother. And her

age doesn't diminish her responsibility to provide for her son." We stated the same in *In re M.R.*, 487 N.W.2d 99, 103 (Iowa Ct. App. 1992), where we held that the

> Iowa legislature has determined that a child's rights in this regard are not a function of his [or] her parent's age. Termination should occur if the statutorily prescribed interval has elapsed and the parent remains unable to care for the children.

That time interval has elapsed here. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (explaining that the time frame imposed by the legislature under this statutory provision is six months). Because W.T. has been removed from parental care for more than the allotted time period, we view this proceeding with a sense of urgency. *See M.R.*, 487 N.W.2d at 103. For these reasons, we conclude termination was proper under Iowa Code section 232.116(1)(h).

### B.    Six-Month Extension

In the alternative, the mother contends she should have been granted an additional six months to work toward reunification. *See* Iowa Code §§ 232.117(5), 232.104(2)(b). Reprising her argument from the previous section, she claims the juvenile court should have considered "the fact that there would be a substantial change in [her] attaining the age of majority within six months of the hearing on the termination of parental rights." According to her, once she turned age eighteen, she could obtain "independent housing assistance, other potential services and job opportunities."

Even if the mother maximized all those opportunities, the record gives no indication that "the need for removal would no longer exist after a six-month extension." *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005). She already had a year and a half of extensive DHS involvement to address her

mental-health and substance-abuse issues and to become a safe parent. Ample services were provided during that time, which she resisted. As the juvenile court noted, "There is little explanation for the lack of progress in this case."

Indeed, the mother offers no valid reason as to why she failed to comply with court orders or follow through with available services. Not only does the mother have a pattern of noncompliance, she continues to deflect responsibility for her actions. *See In re Q.G.,* 911 N.W.2d 761, 772 (Iowa 2018) (noting a parent's attempts to minimize past harmful events concerning the child supports termination). Considering these factors, we agree with the juvenile court that a six-month extension was not warranted. Finding no grounds for reversal, we affirm the termination order.

**AFFIRMED.**