**In the Interest of A.L. and K.B., Minor Children.**

**A.L. and K.B., Minor Children, Appellants.**

No. 92–150.

Court of Appeals of Iowa.

Aug. 27, 1992.

Joseph B. McCarville, Fort Dodge, guardian ad litem, for the minor children.

Mark R. Crimmins and Brian L. Yung of Bennett, Crimmins & Yung, Fort Dodge, for appellee parents.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for amicus curiae State.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

OXBERGER, Chief Judge.

## FACTS

Amy Lowe [1] was born on August 7, 1986, to S.B., her mother and B.L., her father. Karen Brown [2] was born on May 6, 1989 to S.B. and T.B., her father. The parental rights of B.L. have been terminated in a separate proceeding.

The children came to the attention of the juvenile court on September 1, 1989, when both parents were incarcerated. S.B. was incarcerated in the Story County Jail on a felony theft charge and T.B. was being held in Iowa's prison system for a second-degree burglary conviction. At that time, the juvenile court filed an ex parte removal order placing the children in foster care. The children had been living with a friend of the family and had no guardian or custodian. On September 27, 1989, the children were adjudicated children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(j), and the children remained in foster care.

In April 1990, S.B. was released from prison. On May 8, 1990, a review hearing was held. S.B. was the only parent out of prison at the time of the hearing. The court ordered the parents to participate in parenting skills classes which were to start May 21, 1990. The court stated the children were to remain in foster care but ordered supervised visitation for the parents. In June and July 1990, S.B. participated in somewhat limited visitation and parenting classes. In June 1990, T.B. was released from the Missouri prison system. Following T.B.'s release from prison, S.B. went to Kansas City, Kansas to join T.B.

On August 28, 1990, the juvenile court entered an order for a home study of S.B.'s home by the State of Missouri. On November 15, 1990, a corrected order was filed, ordering a home study by the State of Kansas. On January 16, 1991, the State of Kansas notified the State of Iowa it would refuse to accept the children for placement due to lack of appropriate foster homes. The home study was completed on or about May 15, 1991.

On August 22, 1991, the State filed the present petition to terminate the parental rights of S.B. and T.B. pursuant to Iowa Code sections 232.116(1)(d), 232.116(1)(e) and 232.116(1)(g). On October 30 and 31, 1991, the termination hearing was held. At the time of the hearing, the children had been in uninterrupted foster placement for twenty-six months. S.B. testified she had not seen her children face to face for fifteen months. T.B. testified he had probably only been with Karen for six to nine hours total in her entire life and had not seen her for thirteen to fourteen months. In the last 2 years, T.B. had only seen Amy two or three times.

From August 1990 through March 1991, S.B. made periodic phone contact with the children. During the same time period, the children only received one letter or package which arrived in February 1991. From March 1991 to August 1991, there was no phone contact. However, the children received several letters from May through October of 1991. Neither parent asked to schedule visitation in the last fifteen months. Both parents offered numerous excuses why they have failed to contact their children, including: lack of money, S.B.'s pregnancy, purchasing a home, and trying to pay bills.

On December 18, 1991, the juvenile court filed its findings of facts and conclusions of law. While the juvenile court indicated nearly every factor set forth for consideration in the petition for termination of parental rights favored termination, the juvenile court declined to find clear and convincing evidence to order the termination of parental rights. The juvenile court faulted the system for failing to provide services to reunite the family. The juvenile court found that had DHS been more diligent in the follow-up of the home study request, and in the attempts to find suitable housing

---

**1.** This is not the child's real name; her initials are A.L.

**2.** This is not the child's real name; her initials are K.B.

for the children in Kansas City, the children would not have bonded so strongly with the foster family and reunification could have occurred. The juvenile court was not convinced the children could not be reunited with the parents. The juvenile court found S.B. and T.B. had worked very hard and had made extensive life changes for the better. The juvenile court did find the children continued to be CINA and ordered continuing family foster care.

The juvenile court also filed an order requiring the State of Iowa to ask the State of Kansas to assist in providing appropriate foster care placement for the children. The juvenile court found reunification of the family was in the best interest of the children.

On January 10, 1992, the guardian ad litem filed a motion for new trial based upon ex parte communications between S.B. and the juvenile court referee. The juvenile court overruled the motion on the grounds it was untimely.

The guardian ad litem has filed this appeal. The State filed a notice of appeal which was dismissed as untimely. This court granted the State permission to file an amicus curiae brief. This court also entered an order on March 25, 1992, which stayed the portion of the juvenile court order which initiates the removal of the children to Kansas City.

## SCOPE OF REVIEW

Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if

returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.,* 431 N.W.2d 196, 199 (Iowa App.1988) (citing *Dameron,* 306 N.W.2d at 745); *see also In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

In the past, the courts have recognized that parental interest in the integrity of the family unit exists. *Dameron,* 306 N.W.2d at 745. However, this interest is not absolute and may be forfeited by certain parental conduct. *Id.* Because the State, as *parens patriae,* has the duty to assure that every child within its borders receives proper care and treatment, it must intercede when parents abdicate that responsibility. *Id.* (citations omitted).

## ANALYSIS

### I. *Standing.*

S.B. and T.B. argue the guardian ad litem does not have standing to bring this appeal for the termination of parental rights when the State cannot appeal the decision of the juvenile court. S.B. and T.B. further assert they could find no previous instances where the guardian ad litem successfully filed an appeal for termination without being accompanied by the State. This is simply not the case. We note in *In re A.C.,* 415 N.W.2d 609 (1987), the Iowa Supreme Court recognized an appeal by the guardian ad litem. Furthermore, guardians are recognized statutorily as one of the parties granted authority to file a petition for termination of parental rights. Iowa Code section 232.111 provides in pertinent part:

1. *A child's guardian* or custodian, the department of human services, a juvenile court officer or the county attorney *may file a petition for termination of the*

*parent-child relationship and parental rights with respect to a child.*

Iowa Code § 232.111(1) (1991) (emphasis added). We find the parent's standing argument to be without merit. The guardian ad litem has standing to bring this appeal.

II. *Iowa Code section 232.116(1)(d).*

█ In its petition, the State also alleged the parental rights of S.B. and T.B. should be terminated pursuant to Iowa Code section 232.116(1)(d) which provides the court may order the termination of parental rights if it finds all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 and the placement has lasted for a period of at least six months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Iowa Code § 232.116(1)(d) (1991).

The parents concede subsections (1) and (2) of this section have been established by the facts. The dispute is whether there is clear and convincing evidence to establish subsection (3). The guardian ad litem argues the juvenile court erred in finding there was not clear and convincing evidence the parents had not maintained significant and meaningful contact with the children. We disagree.

The record shows the blame for lack of contact does not lie solely with the parents. We note, with respect to this issue, the parents are victims of a catch–22. To begin respectable lives, becoming of parents, S.B. and T.B. found it necessary to relocate in a venue safely removed from negative influences of their past. Significant and meaningful contact is most effectively maintained, however, where the parents live as near to the children as possible.

This situation is aggravated by other important factors existing in the record. T.B.'s parole officer's denied him travel permits and discouraged permanent transfer back to the State of Iowa. A clerical error on the part of DHS significantly stalled efforts to have the kids transferred to Kansas City, where the parents were living. It is clear the system failed its function by not providing suitable opportunity for the parents to resume care of the children, at least on a trial basis, in an attempt to integrate the family.

III. *Iowa Code sections 232.116(1)(e) and 232.116(1)(g).*

█ Regarding Amy, the State alleged the parental rights of S.B. should be terminated pursuant to Iowa Code section 232.116(1)(e), which provides the court may order the termination of parental rights if it finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(e) (1991).

Regarding Karen, the State alleged the parental rights of S.B. and T.B. should be terminated pursuant to Iowa Code section 232.116(1)(g), which provides the court may order the termination of parental rights if it finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(g) (1991).

The parents concede subsections (1), (2) and (3) of Iowa Code sections 232.116(1)(e) and 232.116(1)(g) have been established by the facts involved. The dispute regards subsection (4) of those sections; whether there is clear and convincing evidence the children should not be returned to the parents.

Our court has specifically held this subsection is met "when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code § 232.2(6), exist." *In re M.L.W.*, 461 N.W.2d 609, 611 (Iowa App.1990) (citing *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988)). The juvenile court found clear and convincing evidence to maintain CINA status of the children. We agree with this finding.

The guardian ad litem argues the juvenile court erred as a matter of law in finding all elements of 232.116(1)(e) and 232.116(1)(g), yet failing to terminate. We are unpersuaded by this argument. The statute states "except as provided in subsection 3, the court *may* order termination." Iowa Code § 232.116 (emphasis added). Subsection three lists circumstances under which the court may elect to grant the parents another chance. *Id.* This court made the same analysis in *In Interest of M.H.*, 367 N.W.2d 275 (Iowa Ct.App.1985):

Reading the statute as a whole, we are convinced it was the intention of the legislature not to vest discretion in termination completely with the court, but to give the parent another chance if the court decides factors indicate it would be proper. Subsection (three) shows intent to give the parent a chance when there are extenuating circumstances. Clearly, not every such extenuating circumstance can be listed. We are convinced the use of the word "may" was intended to allow the court to give the parent another try at correcting the situation leading to the CINA adjudication.

*In Interest of M.H.*, 367 N.W.2d 275, 281–82 (Iowa Ct.App.1985).

The record shows no history of physical or sexual abuse on the part of the parents. The parents now have the ability to provide for the needs of the children. After being released from prison, T.B. and S.B. moved to Kansas to avoid the negative influences existing in their former home of Webster County and to begin new lives. They are steadily employed, maintaining sobriety, and are purchasing a house. The couple has taken parenting classes. We realize the primary concern is the well being of the children. There is, however, no significant evidence indicating reunification would be detrimental to the children.

Accordingly, we affirm the district court's findings and order that immediate steps be taken to relocate the children in the venue of their parents.

AFFIRMED.

HABHAB, J., takes no part.